25-1497 Eastern Missouri Board of Trustees of the Iron Workers St. Louis District Council Pension Fund Trust et al. v. Barnhart Crane & Rigging. Morning Your Honors. May it please the Court. My name is Joseph Malin. I represent the appellants in this case, the Iron Workers St. Louis District Council Trust Funds, as well as several of their affiliated local unions. I've asked to reserve three minutes for rebuttal. The clock will continue to run unless you sit down, so you'll have to watch that if you want rebuttal. Thank you, Your Honor. At its core, this case is about a contributing employer's obligation under ERISA to maintain sufficient records to determine the benefits owed on behalf of its employees. This Court should reverse the District Court's exclusion of the payroll auditor and grant of summary judgment in favor of Barnhart in this case because the fund's payroll auditor was not an expert because he made assumptions. And even if he was an expert, the failure to label him as an expert was harmless under Rule 37. Two, there was additional evidence from which the funds could have proven damages at trial even without the auditor's testimony, so the grant summary judgment in favor of Barnhart was improper. And lastly, the District Court applied an overly narrow interpretation of the Trust Funds Participation Agreement and sanctioned Barnhart's practice of paying contributions to other funds for work that was performed within the jurisdiction of the St. Louis District Council Trust Funds. As courts in this circuit have recognized, the policy underlying ERISA supports burden shifting in the context of employer payroll audits. Reasonable assumptions are permitted in the absence of employer records to the contrary. Here, the payroll auditor's assumptions in this case were all based on Barnhart's failure to provide complete evidence and information to the contrary. Where Barnhart did produce evidence to the fund's payroll auditor, the auditor accepted it and the Trust Funds directed the auditor to revise his payroll audit reports. It doesn't matter that some of the assumptions were suggested by Union Council? That's actually not uncommon, Your Honor, in the ERISA context. Oftentimes, payroll auditors will contact Fund Council to get interpretive guidance on collective bargaining agreements, what certain agreements like the Trust Fund Participation Agreement and other CBAs require, and whether or not he should include those hours or exclude those hours. Our advice is always, as Fund Council, if there's evidence to support what the employer is asserting, that the hours aren't owed, we generally accept that unless there's evidence to the contrary. I've got another question just about the underlying record. I'll answer it. The more I studied this case, the more difficult it became for me to understand factually what happened. I raised a couple of points. One is that the different iterations of the witness's proposed summary of his review of the books are not in their entirety in the record. The deposition transcripts are not in their entirety in the record. We just have the pieces that are relevant to the arguments wanting to be advanced by each council. As I studied it, I looked at it and said, now the issue that's before us is should the expert have been excluded in or the witness have been excluded in the entirety as an improper expert witness without an appropriate disclosure? There's a way in which, if you look at all of this, there could be two buckets here. There could be a bucket in which part of his testimony is simply, I reviewed the books, I applied assumptions that were ordinarily applied in cases of the sort, and these are the damages that I think can be established under that. Then there were some other assumptions that were given to him, and then the question becomes, as we take those other assumptions, are those the kinds of assumptions that only experts make, or are those the kind of assumptions that a were brought to his or her attention? I can't really tell because that's not all in the record and there's no explanation. I don't know what happened in the deposition itself because it doesn't look to me in the pieces that we have that that inquiry was done. The judge here, who's a magistrate judge, is left with, and I'm not denigrating magistrate judges, but magistrate judges by and large are not people who try tons and tons and tons of cases. You're right, some of them do. Yeah, some of them do, that's true. Some of them are in the present company, except some of them are in the Court of Appeals. See, now I am in the sticky wicket here, and I'm a very apologetic gentleman, but my point is is that I'm having a hard time putting it all together because there is a world in which the judge would say these opinions may be relevant, may be admissible, these opinions are expert opinions, they were not properly disclosed, and I don't think that it's harmless error that you failed to disclose because, I don't know what's in the deposition, because here's the story, if as you go through the deposition all these issues have been developed and they're in there, then it is all harmless, right? And what I'm saying, I'm having a hard time, and as I just study it, I just keep scratching my head saying I just don't know if I know enough to make the, to get to the answer. So certainly the auditor's affidavit that we supplied and attached in response to our opposition to Barnhart's motion for summary judgment detailed the records that he requested but was either denied or not given. All of his assumptions in this case pertain to location of specific projects and hours worked by Barnhart's ironworker employees. So, and I would say about the assumptions, they weren't speculative, they were reasonable inferences based on the records that Barnhart did provide, if that makes sense. For example, they provided unemployment reports from the state of Illinois. So where Barnhart classified ironworker employees, or employees as ironworkers rather, and they showed up in unemployment reports from the state of Illinois, the auditor assumed that those ironworker employees of Barnhart worked within one of the two local unions that have jurisdiction in the state of Illinois. So they weren't, he wasn't just pulling assumptions out of thin air in this case. He was applying reasonable inferences based on the evidence in the records that Barnhart did provide. I mean, I would say that... What if the defense then had evidence, though, that some of these people were not in the jurisdiction? Some of them were in Indiana, or in a county in Indiana that wasn't part of the locals. So one of the locals does have jurisdiction, Your Honor, in Indiana, in southern, in the southern tip of Indiana, in Evansville, but... But maybe not in the same part where the zip code appears. Then all Barnhart had to do is produce that evidence, and the auditor would have revised his reports. He did revise his reports several times over the course of two and a half years, both during the litigation and prior to the initiation of litigation. When there was evidence... No, I'm saying, I thought, I'm saying, what if some of the spreadsheets that he actually used showed that he was assuming, making an incorrect assumption, that not all the people were within the jurisdiction? What would happen then? Well, again, you know, we have to start from ERISA requires employers to maintain sufficient records to determine the contributions that are owed. So if Barnhart produced records and evidence to show that he got the jurisdiction wrong, he would remove those hours. Why he would remove them? Who would order him to remove them? If there was evidence, he would remove them on his own, or he would contact fund counsel and ask, you know, what should I do here? These records have been produced. Should I include these hours? Should I not include these hours? And again... Well, if counsel's going to make that decision, doesn't that sound a lot more like an expert witness than it does a fact witness who's just testifying on something that's arising out of a review of the books? No, I think it may, if anything, Your Honor, it makes him sound less, like, less of an expert if he's taking direction from fund counsel as to whether or not to include hours. He's, again, making reasonable inferences based on the evidence he has in front of him. He's not relying on any scientific, technical, or special knowledge that would be contemplated under Federal Rule 11 and 702. He's strictly relying on his own personal knowledge and his review of payroll records. What about special knowledge? How could he make assumptions? I would say assumptions aren't... I wouldn't equate those to special knowledge, Your Honor. Assumptions aren't expert opinion, and that was the argument we made in front of Judge Bodenhausen. Just because he's making assumptions does not qualify him as an expert, and assumptions don't equal expert opinion in this case. Well, that is sometimes true, but not always true, right? I mean, because if the assumptions are of a sort that a person engaged in that business always make, and they're a fact witness, like, if you're a guy who does payroll accounting, that's your job, and assumptions are the kind of things that every payroll accountant does, and they do it as a matter of routine, and then you're asked about the books, well, then you're really still just in fact witness land. You're like a treating physician, right? But if you cross over into a place where you've got some legal conclusion that's being drawn that arises out that that assumption creates a legal conclusion, that may be a different animal. And once again, go back to a treating physician, think about that person, is that if all of a sudden they offer up an opinion of a causation tied to the nature of the incident that occurred originally, well, that looks more like, you know, that's not something that's a decision you make in the ordinary course of being a doctor, right? I mean, the physician doesn't ordinarily say, the causation's the car accident, right? And so when the physician says that, that becomes an expert opinion for what you have to give notice under Rule 702, right? It's not merely like I set the leg, right? And with some of these assumptions, isn't that what's happening here? And why not? I don't think so. These are rebuttable assumptions, Your Honor. In this district, the Eastern District of Missouri, courts have recognized this back-and-forth rebuttable assumption framework under ERISA. Stanton v. Larry Fowler Trucking, a decision from this court in 1995, states that the policy underlying ERISA supports burden shifting and reasonable good-faith assumptions are permitted. Ironworkers St. Louis District Council, the same trust funds at issue in this case, versus United Ironworkers in the Eastern District of Missouri case in 2016. Judge Flesig recognized the back-and-forth... How would this work then, as you view this case? You say this was a fact witness. Correct. He would come in and testify that he assumed that all these workers were in the jurisdiction of the union, and therefore, they're owed such and such. The defense would say, no, that's wrong. Some of these guys were in Indiana or some other place, and they're not. Are you suggesting the jury would then go through the spreadsheet and figure out what the correct number of people is? No, Your Honor, I'm suggesting Barnhart could rebut those presumptions at trial. They would rebut it by saying, we've gone through the spreadsheet, and we think he's wrong in his assumption. Well, and they did rebut it with a declaration from their controller. So what would happen in the trial then? How would that get resolved? The judge could decide if the assumption was rebutted or not. Do judges do that? Is it a judge trial or a jury trial? It was set for a bench trial. OK, so you're saying the judge would then go through and say, I agree with the defense that some percentage of these are not in the jurisdiction. Correct. And even assuming for a second that he was an expert, that we failed to disclose him as an expert, to impose the harshest remedy in this case was an abuse of discretion, clearly. We disclosed him at the outset of the case. He wasn't specifically retained for the litigation. He was retained almost three years prior when this audit started, prior to the initiation of the lawsuit. There was no surprise, and Judge Bodenhausen found there was no surprise. He did find that Barnhart would somehow be prejudiced. I'm not sure how. The trial was five months away at that point. It wouldn't have disrupted the trial court's calendar. And they had a full opportunity to depose him and review his reports. All of his reports were produced throughout the course of discovery. There was no discovery intentional misconduct here. There was no repeated discovery violations here. There was no harm or prejudice to Barnhart. The only thing that would have practically changed is the label we put on the witness, expert versus fact. All his reports were the same that were disclosed. His name, the subject of the topics that we expected him to testify to were the same, and I see I'm running out of time. I would ask a question. Didn't the district court also, in addition to the expert witness issue, didn't the court exclude much of the testimony as speculative? They did. I didn't see that really argued in the briefing. Assumptions, Your Honor, by nature are somewhat speculative. But again, the assumptions that he made in this case were based on reasonable inferences, based on the records that Barnhart did produce. But don't you think that's a separate basis for exclusion? I don't. I know they cite cases. They're toxic. Do you have an argument about that? Well, they cite toxic tort cases and things about speculation as to causation. I think that's the case they cite. There's no district court case or circuit court case in this country that I'm aware of where a court has found a payroll auditor in the Taft-Hartley Benefit Fund context to be an expert witness. Thank you, Your Honor. I'd ask to reserve the rest of my time. The court did not exclude the testimony of that witness entirely, did it? Didn't it allow some of it? The court, yes. But then the court went on to reason that there was nothing in his reports that we could present. Therefore, summary judgment was somehow in favor of Barnhart. We believe that was improper as well. Thank you. Very well. Thank you for your argument. Mr. Merkle, we'll hear from you. Good morning, Your Honors, and may it please the court. I'm Zach Merkle, Counsel for Appellee Barnhart, Crane & Rigging Co. This appeal canon should be affirmed on the narrowest, most deferential ground. And I want to start where Judge Shepard left off previously. I think it's an obvious point that part of the evidence was excluded on speculation. It was an independent ground. And in fact, the trial court's quotation, and this is Doc 137, page 19, it's excluding Soderstrom in his audits, not only because they are undisclosed expert opinions, but also because their calculations as the damages are speculative. And so that was not raised in the opening brief. And under the case law, it's an independent ground for affirming the district court. And I don't think Your Honors should go any further than that on the Soderstrom exclusion issue. Assuming you do go further and reach the merits on Soderstrom, I think it is a distinction first of, is he an expert or is he offering lay opinion? And one thing I heard a lot previously was these assumptions. You know, Rule 701 governs lay opinion. And lay opinion must be limited to opinion that's rationally based on a witness's perception or personal knowledge, as I view it. And not based on scientific, technical, or other specialized knowledge. Conversely, the expert rule, 702, encompasses things that were scientific, technical, and other specialized knowledge. As well as applications of principles and methods to the facts of the case. And so I think that's where these assumptions are really important here. This isn't a bland summary of documents that were reviewed, as has been acknowledged. There were assumptions about geographic location. There were assumptions about the type of workers involved. And there's some back and forth about, you know, the accuracy of those assumptions. But the core bit for the expert point is that he was taking assumptions. He was applying his judgment in the industry. And he was coming up with an opinion on damages. This classic expert work. And so I think those assumptions are really the vital reason here. As Judge Shepard, I believe it was, noted, there was a partial exclusion. And he said, if you could have presented testimony or evidence from Mr. Soderstrom that did not include those assumptions, he would have permitted it. There just, there wasn't that because the plaintiffs had sort of hung their hat on that one basis for damages. So he definitely was an expert. If he was an expert, it's undisputed that he wasn't disclosed. And so the question then becomes under Rule 37C is, what's the remedy there? You may not be able to answer this question succinctly. It may be it's too much in the weeds. But can you give an example of one of the assumptions that we're talking about? So one of them was the geographic location of these iron workers, right? And he was working off a list. And he just assumed, at Plaintiff's Counsel's direction, that they all were in the local vicinity of the plaintiff unions. And there's some back and forth in the record about Barnhart paid the contributions, but paid them to the actual employees' unions. Because they brought in labor from out-of-state, et cetera. So that's... But didn't he have to make that assumption because there were not records? Yeah, so that records piece, I don't think that that's necessarily the expert issue. I agree that goes to the damages. And what they're trying to say is, these inadequate records basically relieve me as plaintiff of my burden of proof. The district court specifically addressed that issue in its order and found that there wasn't a showing that Barnhart's record-keeping was inaccurate. There just wasn't that showing. And so, and this goes back to the McKinsey Engineering case that the district court relied on, is that, sure, there's a presumption. But if there's no showing that the records were actually inadequate, which was a factual finding by the district court, and there was some evidence in the record that disputed the accuracy. So it was referenced earlier, the Stearns affidavit, which was the Barnhart controller, just did a spot check of his reports and found that this guy didn't work in this area and this guy didn't work in this area. And so you get what I'm saying is, they did a spot check and found all these inaccuracies. So the court applying McKinsey Engineering said there wasn't that presumption. And once you're not applying that presumption. Presumption of what now? The presumption that, so when there's inaccurate records, the presumption that it falls on the defendant to sort of disprove the amounts. And so they're trying to relieve their burden of proof here and it is improper. Isn't this auditor basically doing a mathematical equation? So there is. I guess. And if so, why is he an expert? Yes, so he's applying his judgment and his expertise to the facts of the case. So what he has done is taken a bunch of payroll records. He's analyzed the CBA. He's analyzed a bunch of these employment documents. And he's compiled them but also decided what rates apply here and who's working here. And how do I compile these documents into effectively a spreadsheet that then calculates these amounts. And so he even testified in the portions of the deposition that are in the record that he used his judgment and he also applied these assumptions at the direction of plaintiff's counsel to formulate his opinion. So he's using these methodologies, using his judgment and his experience to calculate damages and come up with an opinion of damages. And that's classic expert work. I'm sorry, Judge. And that question is, is that in fact classic expert work? Because the issue is that there are people who, because of specialized knowledge and training, are engaged in a business that requires them to use those skills day-to-day and they're just fact-witness. Once again, let's go back to the physician. The physician said, I reduced multiple fractures within the femur with the application of screws, pins, and a metal plate or something, right? That's a fact thing. There's also some opinion being offered there. One, that the fracture was reduced. And two, the technique that was used and that was appropriate under the circumstances. Yeah, we let that guy testify every single time as just a fact witness. And in this case, there seems to be an argument advanced that what the accountant was doing is what accountants who engage in this very specialized form of accounting, what they do is just exactly this. And all that they're really doing is testifying as to the facts, not an expert opinion. Why are they wrong on that? Well, the facts are the underlying documents. It's the fact that he's taking these documents and not just purely summarizing them, but he's making assumptions about geographic location, about the type of iron worker involved. And he is using those assumptions to formulate an opinion. And it's similar to the treating physician on causation. You're trying to establish an element here with an opinion. You're establishing an element of the case just like causation. But is it really an opinion, or is it just either he's right or he's wrong about where these iron workers did their work? And you spot checked it and said some of it's wrong. Why couldn't that all just be presented to the judge? And then the judge would say, only 75% of these people were in the geographical area. And so we're reducing the recovery. Sure. I understand the argument. I also recognize that there is sometimes a blurry line there. The district court, in a very long order, applied its discretion, its knowledge of the underlying case. And there's a lot of discretion on delineating whether Rule 26 disclosure requirements are necessary. And I think this is maybe one of those examples of it's sort of close to the blurry line. I think it's pretty clear because he's using assumptions to then forecast and analyze an opinion of these unpaid contributions. And he's using his expert judgment to decide. He's using his knowledge in the industry to decide and issue those opinions. But if it's a close question, and I think it is, the discretion of the district court should be affirmed on that because it's not clear. And that's true. But once again, you get to the question of, well, exclusion that deprives one of its claim in its entirety is a harsh remedy. And it's a disfavored remedy generally, right? And so the amount of discretion you have requires you to look at, as the trial judge, you sit down and you say, OK, what exactly is the prejudice? Why is the prejudice not remedial by merely requiring the appropriate disclosure and a short continuance? And in the case where it's been the focal point of extensive litigation already, and nobody's at this point shocked or surprised by the assumptions or the opinions rendered, then the burden's on you to show what that prejudice is and why that prejudice can't be remedied by merely enforcing the disclosure and granting a continuance and allowing you to disclose an expert of your own to rebut. Yeah. So I think that goes to the substantial justification harmlessness point. I will first say the district court clearly analyzed each of the factors and concluded that, in its discretion, the default self-executing sanction of Rule 37c should apply. So I disagree that it's like in the other context. If you've got discovery compliance issues on a request for production and then the court's evaluating, oh, should I strike pleadings or whatever, that is not that case. We've got a default self-executing sanction that it is on the proponent to then prove why they fit in the harmlessness factor. And I think another piece of this that hasn't been mentioned yet, but there are a bunch of reports in this case. And the early reports had excluded payments that Barnhart had made to other unions that were out of state. And so we're advancing through litigation in this posture. We think he's a fact witness. He discloses a fact witness. And then a couple months before the close of discovery, they issue a new revised report. These are these August 2023 reports that significantly increase the damages from in the 100,000s range to the seven-figure range. I think it was a couple million. And so that affects how you litigate a case, as all of you know. I mean, if we're talking a dispute of 100,000, 200,000, maybe you litigate a case a little differently than when you're talking about seven-figure possible recovery. So there was a lot of prejudice there in terms of, when the court was writing in May 2024, with a trial coming up in November 2024, I got five months towards trial, discoveries closed. I basically, if I do what Your Honor is suggesting, I have to postpone the trial. I have to make Barnhart spend a lot of money on an expert that they weren't planning on doing. And I have to basically reopen the case after it's been closed for several months. And so that was prejudice. I think it's within the court's discretion to find prejudice, and as well as all the other factors. Is there anything in the record that explains or would support this counsel providing instructions to the witness as to assumptions to take? Does anybody explain that, yeah, that happens all the time in this industry, that counsel instruct the witness as to assumptions to make? So Mr. Sodershum's, at least portions of his deposition, are in the record. I don't have that right in front of me, the doc site, but there is a transcript of him in the record. He does explain his reasons for the assumptions, and he also explains that plaintiff's counsel directed him to do that. I don't recall there being anything about, this is standard in the industry. And in fact, I think I recall at one point, he even said this was the only time he had done it this particular way. So I'd encourage you to read that, the portions of the transcript. Your honors, I apologize, I don't have the pin site for the doc number of that transcript, but it definitely is in the record. And I think that pretty clearly explains his assumptions. And then I would also point to that Stearns declaration that sort of pinpoints in a couple pages what the assumptions were and why they were inaccurate. I make a big point in your brief about this so-called alternative reason for exclusion. That the evidence was speculative. And I gather you mean that the opinion was not supported by the assumption rather was not supported by evidence. Is that why you say it's speculative? Correct. And I think that applies to both lay testimony and expert testimony. In our brief, we cited both. But you can exclude evidence on speculation. If it's lay, if it's lay testimony... Why is it speculative here? Because we have these assumptions that were not supported by... When you say these assumptions, you're just talking about where the iron workers were, where they were located? Where they were located, also whether they were iron workers at all. If you look at the Stern declaration, he points out there's several of them that weren't even iron workers subject to the union. Why isn't that just a matter for sorting out a trial? You haven't proven your case because some of these people are not iron workers, or some of them are in Indiana. So you only proved 75% of your case. Why is that? May I answer it? Yeah. Why isn't that the way you handle something like that? Well, maybe that's an argument that could have been raised on appeal, but it wasn't raised in the opening brief. And so I respectfully, Your Honor, it is a valid ground. It's certainly not plain error. They haven't even requested plain error. And I think they've waived that argument, and it's an independent ground. All right. Thank you for your argument. Thank you, Judge. Thank you, Your Honors. We'll hear a short rebuttal. Counsel mentioned the blurry line, which Judge Bodenhausen recognized, and then he went on to impose the harshest sanction possible, the exclusion of the auditor's reports and testimony. There was no justification for excluding his testimony. We know from Wagoner, discretion narrows as the severity of the sanction the court elects to impose increases. The court erred by not considering lesser sanctions under this court's decision in Heartland Bank. Judge Erickson wrote a dissent in Vanderburg. When there is no misconduct or discovery violations, lesser sanctions should have been imposed. Very well. Thank you. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course. Thank you, Your Honors. Thank you, Your Honor.